The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory M. Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the modification of Finding of Fact No. 11(d), Conclusion of Law No. 5 and Award No. 3.
* * * * * * * * * * *
The Full Commission adopts the findings of fact, except with the specified modification, found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 40 years old, with a date of birth of 3 August 1953. For his education plaintiff had completed high school. For his work history before beginning work for defendant, plaintiff had worked for one and a half years as a restaurant dishwasher, for thirteen years as a cook in a restaurant, for one and a half as a cook in a restaurant owned by his mother, for two and a half as a hospital orderly, and one and a half years as a freight mover for a trucking company. Plaintiff began working for the defendant through a temporary agency in about January 1989. After about eight months, plaintiff was hired by defendant in August 1989.
2. On 12 December 1989 plaintiff was working for defendant as an "order picker." At this time plaintiff sustained an admittedly compensable injury by accident when he fell 16 to 30 feet at work. As a result of this fall, plaintiff suffered serious injuries which included facial fractures, bilateral wrist fractures, skull fractures, and traumatic brain injury (cerebral edema and bilateral hematoma).
3. Although plaintiff's initial condition and treatment is not contested as compensable, the following is a brief summary: Initially plaintiff was hospitalized in the intensive care unit with life-threatening injuries. A craniotomy was performed to relieve intracranial pressure caused by the brain hematomas. Treatment for his fractured wrists could not begin until his condition was stabilized from the head injuries. The fractures to the wrists were "comminuted," which is the bones were fractured into multiple pieces, rather than a clean break. Over the years following the accident, Dr. L. Andrew Koman performed five surgeries on plaintiff's right wrist and seven surgeries on plaintiff's left wrist. In April 1994 (four and a half years after his accident) plaintiff reached maximum medical improvement for his wrist injuries and retained a 60 percent permanent partial impairment to the use of each arm as a result of the injury by accident of 12 December 1989.
4. Between 1990 and 1992 plaintiff received treatment and evaluations from psychologists and neuropsychologists. Although there was some disagreement among the doctors regarding the extent of any impairment, as a result of the compensable head injuries, plaintiff did retain some functional limitations as further found in paragraph 9 below.
5. In February 1992 (a little more than two years after his accident), due to the compensable injury of 12 December 1989, plaintiff was unable to return to his regular job with defendant; and defendant could not provide plaintiff with a job within his restrictions. At this time defendant was laying off employees. Plaintiff was also unable to obtain a job within the competitive job market, unless retraining was available. Defendant offered plaintiff retraining through Goodwill Industries of North-west North Carolina (hereinafter "Goodwill"). There were three periods during which plaintiff worked at Goodwill: first, February 1992 through April 1992; second, July 1992 through September 1992; and third, January 1993 through February 1993. At each session plaintiff was trained in computers and data entry.
6. During February 1992, plaintiff was highly motivated in his work. He strove for accuracy in data entry; he presented himself in a professional manner; he dressed and behaved appropriately in the work environment; and he interacted well with co-workers. On one hand, plaintiff was able to achieve all the goals set at Goodwill. On the other hand, plaintiff was unable to work a full eight-hour day; and he had to take periodic breaks.
7. Plaintiff returned to Goodwill in July 1992 (after about a two-months interval). In September 1992 plaintiff had to discontinue the program because data entry aggravated the condition of his wrists. In October 1992 surgery was done to both wrists to remove hardware which had been implanted during previous operations. Dr. Koman allowed plaintiff to return to Goodwill in January 1993.
8. When plaintiff returned to Goodwill in January 1993, the objective was to maintain his previous skills and to provide additional computer training in spreadsheet use. During the program, plaintiff was moderately to highly motivated; he presented good communication skills; he interacted well with others; and he demonstrated appropriate work habits. Plaintiff's scores on testing were very high.
9. Plaintiff was re-examined by psychologist Kevin Wilson during a three-week period in May and June 1994. At this time plaintiff's I.Q. scores had improved from earlier testing in 1990. His overall mental abilities were in the low to average range, with significant deficits in higher level problem-solving and auditory memory; and he suffered from mild to moderate depression. Considering plaintiff's continued mental impairments, the examinations by Mr. Wilson in May and June 1994 were reasonably necessary to effect a cure, to provide relief, or to lessen any period of time during which plaintiff was unable to be gainfully employed.
10. At the time of the hearing, plaintiff retained serious impairments in his ability to return to work including no repetitive use of his hands. However, no one was of the opinion that plaintiff was "permanently and totally" disabled. Dr. Koman and Mr. Wilson were of the opinion that plaintiff would require retraining and assistance in order to return to work, and defendant had offered those services to plaintiff. Dr. Koman has approved two jobs as being within his physical restrictions. Plaintiff testified that he believed he was capable of returning to work. Jan Gomez, with Goodwill, testified that plaintiff was capable of returning to work; and Sabrena Bagby, defendant's vocational rehabilitation person, testified that plaintiff was capable of returning to work. Based on the above opinions, the undersigned finds that at the time of the hearing plaintiff was capable of returning to work; however, there is insufficient evidence of record from which the undersigned can infer that there were jobs available within plaintiff's restrictions which he could reasonably be expected to obtain at the time of the hearing.
11. Defendants have taken no action to stop payment of temporary total disability compensation. However, in the search for a job within plaintiff's restrictions, certain disputes have arisen. Primarily, plaintiff's attorney will not allow plaintiff to meet with defendant's vocational rehabilitation person outside of plaintiff's attorney's presence; plaintiff will not allow defendant's vocational rehabilitation person to be at job interviews; plaintiff has tape-recorded job interviews; and plaintiff has worn blue jeans to job interviews. Regarding a continued search for suitable employment, the undersigned finds that the following procedures would be fair:
 a. Plaintiff should not be required to meet with defendant's vocational rehabilitation person, except in the presence of his attorney. However, failure to respond promptly could result in the loss of employment opportunities; therefore, plaintiff and his attorney should attempt to respond to any interview request within the same business day as contacted, and in all cases, respond within 24 hours of being contacted.
 b. Defendant's vocational rehabilitation person should attend any job interviews with plaintiff. By attending the interviews, the vocational rehabilitation person can offer assistance to plaintiff by pointing out potential problems in his presentation during the interview. The job interview should not be recorded, because the presence of a tape-recorder would have a chilling effect on potential employers. Either plaintiff or the vocational rehabilitation person may take notes for future recall of events at the interview. During the interview neither side should discuss this workers' compensation claim or any pending litigation between plaintiff and the defendant, because this would have a chilling effect on potential employers. Either plaintiff or the vocational rehabilitation person should frankly explain limitations of plaintiff to potential employers, which would include restrictions from doctors and test scores while he worked at Goodwill.
 c. For an interview plaintiff should dress and behave appropriately. It was noted in Goodwill reports that plaintiff dressed and behaved appropriately for the work environment, and this same dress and behavior would be expected at any job interview.
 d. Plaintiff shall cooperate with any reasonable request by Vocational Rehabilitation Services.
12. The undersigned makes no findings of fact regarding any injury to plaintiff's brain as an impairment to an important internal organ.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. On 12 December 1989 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2 (6).
2. On 12 December 1989 plaintiff's average weekly wage was $326.79, yielding a compensation rate of $217.86. Stipulations and N.C.G.S. § 97-2 (5).
3. As a result of the injury by accident of 12 December 1989 plaintiff is entitled to temporary total disability compensation in the amount of $217.86 per week beginning on 12 December 1989 and continuing until plaintiff returns to work or until further ordered by the Industrial Commission. Defendants are entitled to a credit for any amount of temporary total disability compensation paid. N.C.G.S. § 97-29.
4. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of the injury by accident of 12 December 1989. Payment shall include the examinations by Mr. Wilson in May and June 1994. N.C.G.S. § 97-25.
5. As plaintiff is capable of returning to work with restrictions, he must make a reasonable effort under the circumstances to obtain gainful employment as set forth in findings of fact No. 11 above. Russell v. Lowes ProductDistribution, 108 N.C. App. 762 (1993).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation in the amount of $217.86 per week for the period of time from 12 December 1989 and continuing until plaintiff returns to work or until further ordered by the Industrial Commission. Defendants shall have a credit for any temporary total disability compensation paid, and all payments shall be subject to an attorney's fee as provided below.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of the injury by accident of 12 December 1989. Payment shall include examinations by Mr. Wilson in May and June of 1994.
3. Plaintiff shall make a reasonable effort under the circumstances to obtain gainfully employment within his restrictions. Any job search shall be subject to the conditions as found in finding of fact No. 11 above.
4. An attorney's fee in the amount of 25 percent of all compensation due plaintiff from the date of this Opinion and Award and continuing is hereby approved for plaintiff's counsel. Payment shall be made by making every fourth check payable to plaintiff's counsel and forwarding same directly to plaintiff's counsel.
5. Defendants shall pay all costs, including an expert witness fee of $250.00 to Dr. L. Andrew Koman.
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER
11/16/95